IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**GARRY LEE MOORE**                                                                      **PLAINTIFFS**
**(All Those Similarly Situated)**

**V.**                                                                        **NO. 1:24-CV-90-DMB-JMV**

**MONROE COUNTY DETENTION**
**FACILITY (MCDF), et al.**                                                              **DEFENDANTS**

**OPINION AND ORDER**

Garry Lee Moore filed a pro se complaint claiming the Monroe County Detention Facility, the Monroe County Board of Supervisors, and Monroe County Sheriff Kevon Crook denied him various rights and privileges while he was confined at the county's detention facility. The defendants move to dismiss Moore's complaint or, alternatively, for a more definite statement and *Spears* hearing. Because Moore fails to state a claim against the defendants, the motion to dismiss will be granted.

**I**
**Procedural History**

On December 18, 2023, Garry Lee Moore[1] filed a pro se complaint in the Circuit Court of Monroe County, Mississippi, against Monroe County Detention Facility ("MCDF"); "Monroe County, Mississippi Board of Supervisors" ("Board"); "Monroe County, Mississippi Sherriff Kevon Crook;" "Monroe County, MS Deputies/Jailors;" "Liability Insurers;" and "Jane/John Doe,"[2] "in both their individual and official capacities,"[3] alleging various federal claims under 42

---

[1] Moore included "(All Those Similarly Situated)" under his name in the complaint's caption but in the complaint's "Parties" section, he lists only himself as a plaintiff. Doc. #2 at 1, 2.

[2] Moore sues all defendants in their individual and official capacities.

[3] Doc. #1 at PageID 45.

U.S.C. § 1983[4] as well as state law claims, all based on the conditions of his confinement at MCDF. Doc. #1. As relief, Moore requests "compensatory damages in the amount of $500,000.00," "punitive damages in the amount of $500,000.00," "any and all attorney fees, investigation fees, litigation fees and costs of court associated with prosecuting the claims," "declaratory judgment and injunctive relief required by law," and "any other relief or remedy required by law." *Id.* at PageID 47–48. Asserting federal question jurisdiction, MCDF, the Board, and Crook[5] removed the case to the United States District Court for the Northern District of Mississippi on May 16, 2024. Doc. #1.

On May 23, 2024, the defendants filed a "Motion to Dismiss or Alternatively, Rule 12(E) Motion for More Definite Statement and *Spears* Hearing." Doc. #4. Moore did not respond to the motion.

## II
## Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[6] "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted). A "failure to oppose a 12(b)(6) motion is not in itself grounds for

---

[4] Moore alleges the defendants "acted under the color of law at all times relevant …." Doc. #2 at PageID 45.

[5] Because the remaining named defendants—"Monroe County, MS Deputies/Jailors," "Liability Insurers," and "Jane/John Doe"—have not been specifically identified or served, the Court's use of "defendants" refers to MCDF, the Board, and Crook.

[6] The defendants do not expressly mention Rule 12(b)(6) in their motion or memorandum brief but the language they use in the "Standard" section of their brief indicates they seek dismissal under Rule 12(b)(6). *See* Doc. #5 at 5. Although "[a]lternatively, [they] request Rule 12([e]) relief in the form of a Spears hearing," Doc. #4 at 2, Rule 12(e) motions are appropriate only where a pleading is so unintelligible, vague, or ambiguous such that the opposing parties cannot reasonably prepare a response, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); and relief under Rule 12(e) is disfavored and should be granted sparingly, *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 1186 (D. Nev. May 1, 2023). Moore's complaint is generally intelligible.

granting the motion. Rather, a court assesses the legal sufficiency of the complaint." *Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (footnote omitted).

In evaluating a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). The Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (citations omitted).

### III
### Factual Allegations

On or around April 13, 2023, Garry Moore "was sentenced by the circuit court judge to serve a sentence in the Mississippi Department of Corrections and to be immediately transferred to the Mississippi Department of Corrections (MDOC)" where he would have the "immediate access to yard call daily, inmate legal assistance program, administrative remedy program, rehabilitative programs, and access to inmate jobs that are not race-based." Doc. #2 at PageID 32–33. Moore was not immediately transferred to MDOC. *Id.* at PageID 33. While in custody at MCDF from April 13, 2023, to August 11, 2023, "the defendants denied [Moore] access to daily yard call, to inmate legal assistance program, to administrative remedy program, to rehabilitative programs, and to inmate jobs that are not race based" because the "defendants give the best jobs and placements to members of the white race." *Id.*

### A. Yard Calls

"Defendants have a jail policy that states yard call is provided daily" but they "have denied yard call daily for [Moore]," which led to "conflicts arising among other prisoners" and "increase of stress to build up." *Id.* at PageID 34, 35.

### B. "Level 1" Privileges

"When entering MCDF the prisoner, as was [Moore], is booked it [sic] the facility and is provided a blanket, a sheet, a mattress, a pair of pants, a shirt or T-shirt, all of which are/were stained and torn. Some inmates may obtain an untorn mattress, blanket, or sheet." *Id.* at PageID 35. "Every Wednesday the prisoners, including [Moore] are provided 1 bar of soap, 1 roll of toilet paper and razor to shave with. Some Wednesdays a toothbrush and toothpaste is provided." *Id.* at PageID 35–36.

"All prisoners entering MCDF will be placed in Level 1 cells, if not a lockdown cell." *Id.* at PageID 36. "Only the prisoners in Levels 2-4 are allowed commissary purchases for various items."[7] *Id.* "The prisoners are left in Level 1 for at least 30 days." *Id.* Moore was in a Level 1 cell "in excess of 30 days" where he, like other Level 1 prisoners, had "access to a wall telephone with very expensive rates per call." *Id.* "Level 4 allows prisoners other privileges, like going out to work and to even smoke cigerettes [sic]," "is given to the white race more than it is given to the black race," and "even when a member of the black race is allowed Level 4 placement the best jobs are given to the white race."[8] *Id.* at PageID 38–39.

---

[7] This includes "deodorant, hair grease, Vaseline, lotions, ibuprofen, cough drops, alka-seltzer, triple antibiotic cream, foot powder, envelopes, stamps, pen, writing tablet, post cards (birthday, holiday, friendship), foods, beverages, coffee, water, and other personal hygiene items." Doc. #2 at PageID 36.

[8] Moore also alleges that when a prisoner violates disciplinary rules, the defendants have a policy, custom, or practice of placing prisoners in "one-man cells," providing them with sandwiches for each meal, and not allowing them access to telephone calls—all without notice of charges, investigation, or a hearing—and that this happens more frequently to black prisoners. *Id.* at PageID 39–40. But Moore does not allege he ever experienced such.

### C. Access to Legal Assistance

"When it comes to legal assistance, all that the defendants provide the prisoners with are access to out-dated Mississippi codes and a few Southern Reporters for Mississippi." *Id.* at PageID 41. "[M]ost of the times, when the prisoners, including [Moore], request Mississippi Codes or Southern Reporters, the request is ignored and/or never granted." *Id.* at PageID 42. Moore was "never afforded access to items needed to prepare and mail papers to the courts and other legal offices and agencies." *Id.* Specifically, Moore was not given:

> (a) updated Mississippi house nor Senate Bills; (b) Federal Reporters; (c) United State Supreme Court Reporters; (d) new United States Supreme Court decisions; I Mississippi Rules of Criminal Procedures; (f) Mississippi Rules of Civil Procedures; (g) Mississippi Rules of Appellate Procedures; (h) Mississippi Rules of Evidence; (i) Mississippi Rules of Professional Conduct; (j) Mississippi Code of Judicial Conduct; nor (k) Mississippi Pattern Jury Instructions-Criminal Cases.

*Id.* Moore's "family, whenever they could, supplied [him] tools needed to exercise his constitutional rights … but such was frustrating many times because the defendant(s) Jane/John Doe(s) would deny access to pen and paper family members would bring to the MCDF for [his] needs to prepare for his criminal cases." *Id.* at PageID 42–43. Consequently, Moore did not have the "ability to prepare jury instruction for his set July 31, 2023, trial date, forcing him to enter a plea of guilty that he relentlessly and/or would have not other[w]ise taken, on July 28, 2023." *Id.* at PageID 43.

## IV
## Analysis

In moving to dismiss Moore's complaint,[9] the defendants argue that (1) MCDF is "not a proper party that can be sued;" (2) "all of [Moore's] claims are barred by the Prison Litigation

---

[9] The motion to dismiss does not specify if the defendants seek dismissal with prejudice but in their memorandum brief the defendants ask that MCDF be dismissed with prejudice. Doc. #5 at 7–8.

Reform Act because he … failed to allege any physical injuries and … failed to exhaust administrative remedies;" (3) Moore's "First Amendment claims fail because he has no constitutional right to free postage for non-legal mail, and he has failed to allege denial of access to the court caused an actual injury;" (4) Moore's "equal protection claims fail because he has no standing and has failed to identify a similarly situated comparator;" (5) "any state law claim based in negligence fails because [Moore] failed to send the requisite Notice of Claim and the County is immune under the inmate exception of the MTCA;" and (6) "because [Moore] cannot plausibly plead any constitutional violation on the part of any Defendant, he is not entitled to injunctive or declaratory relief." Doc. #5 at 1–2.

### A. Claims against MCDF

The defendants argue that Moore's "claims against the 'Monroe County Detention Facility' fail because a county jail is not a proper entity and cannot be sued under state or federal law" and the claims against it should be dismissed with prejudice. Doc. #5 at 6–7.

An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991).

Regarding the federal law claims against MCDF, "[s]ection 1983 imposes liability on anyone who, under the color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Turnage v. Britton*, 661 F. Supp. 3d 628, 631 (S.D. Miss. 2023) (citation and internal quotation marks omitted). "A jail … is not a legal entity capable of being sued and is not a proper defendant in a lawsuit under 42 U.S.C. § 1983." *Leming v. United States*, No. 2:20-cv-173, 2021 U.S. Dist. LEXIS 162623, at *2 (S.D. Miss. July 6, 2021). Since it is undisputed that MCDF is anything other than a jail, all federal law claims against MCDF will

be dismissed.

Regarding the state law claims against MCDF, the "Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a claim or suit." *Delta Reg'l Med. Ctr. v. Green*, 43 So. 3d 1099, 1101 (Miss. 2010) (citing Miss. Code Ann. § 11-46-7(1)). For this reason, "a department of a local governmental entity must enjoy a separate legal existence in order to be properly named as a defendant." *Rollins v. Hattiesburg Police Dep't*, No. 2:14-cv-61, 2015 U.S. Dist. LEXIS 91315, at *10–11 (S.D. Miss. July 14, 2015) (citation and internal quotation marks omitted). In Mississippi, "a county jail is not a separate legal entity which may be sued, rather it is an extension of the county." *Guillory v. Jones Cnty. Jail*, 2014 U.S. Dist. LEXIS 159159, at *3 (S.D. Miss. Nov. 12, 2014). So any state law claims against MCDF must be dismissed too.[10]

### B. Federal Claims Against the Board and Crook

#### 1. Exhaustion

The defendants submit that all Moore's federal law claims are "barred by the Prison Litigation Reform Act" because his "[c]omplaint does not contain any allegations that he exhausted his administrative remedies prior to bringing suit." Doc. #5 at 8.

The PLRA requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a).[11] The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent

---

[10] All claims against MCDF will be dismissed with prejudice. Though the defendants ask the Court to dismiss the claims against MCDF with prejudice only in their memorandum brief and not in their motion to dismiss, since § 1983 and the MTCA do not allow claims to be brought against county jails, in the interest of efficiency, the Court will dismiss with prejudice the claims against MCDF because the defects in Moore's complaint are incurable. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable.").

[11] *See Williams v Henagan*, 595 F.3d 610, 619 (5th Cir. 2010) (PLRA applies when inmate incarcerated at time he files suit, even if released during pendency of suit).

judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citation omitted). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Id.* at 83–84 (2006); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (exhaustion is mandatory); *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (Fifth Circuit takes "strict approach" to PLRA's exhaustion requirement); *see also Lane v. Harris Cnty. Med. Dep't*, 266 Fed. App'x 315, 315 (5th Cir. 2008) (under PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Even when the administrative remedies will not provide the prisoner's relief sought—for instance, monetary damages—exhaustion is still required. *Booth v. Churner*, 532 U.S. 731, 739 (2001).

Moore does not allege that he exhausted his administrative remedies as to his federal claims before filing suit and there is no indication he did so.[12] Because Moore did not comply with the PLRA's exhaustion requirement, his § 1983 claims will be dismissed.[13]

### 2. First Amendment Claims

Because, as mentioned above, "Section 1983 imposes liability on anyone who, under the

---

[12] There are exceptions to the exhaustion requirement which apply in "extraordinary circumstances." *Leon v. Harrison*, No. 09-10531, 2024 U.S. Dist. LEXIS 83696, at *2 (S.D. Miss. April 16, 2024) (quoting *Broderick v. Chapman*, 364 Fed. App'x 111, 112 (5th Cir. 2010)). Exhaustion is not required when the remedies to exhaust are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be futile. *Id.* The plaintiff bears the burden of demonstrating the futility of administrative review. *Id.*

Moore alleges that when black prisoners formally complained of being assigned more stringent jobs than white prisoners, the black prisoners would lose their jobs or be demoted "for no other reason than making a formal/informal grievance," and that the "lockdown" treatment of prisoners was imposed without notice of a disciplinary charge or a fair and impartial disciplinary decision maker. Doc. #2 at 10, 11. This, along with the alleged negative treatment of black prisoners making formal and informal grievances with job placement, may indicate an expectation of futility if Moore had engaged in MCDF's administrative remedies. However, Moore makes no such allegation.

[13] Because Moore did not exhaust administrative remedies with respect to his § 1983 claims, the Court need not address the defendants' argument that "to the extent that [Moore] is requesting compensatory damages for mental and emotional injuries, his claims fail because he has not alleged any physical injury." Doc. #5 at 8. Regardless, the Court agrees that Moore did not allege any physical injuries.

color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws," *Turnage*, 661 F. Supp. 3d at 631, such governs Moore's First Amendment claims. Since Moore did not exhaust his administrative remedies, his First Amendment claims must be dismissed.

The defendants argue Moore's First Amendment claims would still fail even if he had exhausted administrative remedies.[14] Doc. #5 at 10. The Court agrees.

Regarding non-legal mail, prisoners do not have a constitutional right under the First Amendment (or otherwise) to postage or writing materials to prepare and send non-legal mail. *Walker v. Davis*, 533 F. App'x 471, 471 (5th Cir. 2013). To the extent Moore alleges a First Amendment violation because he did not have access to stamps, writing materials, pens, or the like to send personal, non-legal mail, such does not violate the First Amendment.

As for legal mail, prisoners possess a constitutional right of access to courts, including the "ability … to prepare and transmit a necessary legal document to a court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). The right of access to the courts is limited to allow prisoners the opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as a delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted).

A plaintiff lacks standing to bring a claim of denial of access to the courts if he does not show actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "Such an injury is shown when the

---

[14] The defendants submit that Moore "seems to allege two separate First Amendment claims" that both fail: (1) Moore "alleges that because he was not afforded access to the commissary, and thus access to purchase stamps, pen, writing tablets, and birthday holiday and friendship postcards, he was not allowed to send non-legal mail" in violation of the First Amendment; and (2) Moore "seems to allege a First Amendment violation on the basis that Defendant denied him meaningful access to the court." Doc. #5 at 10 (footnotes omitted).

prisoner demonstrates that the policies or actions of prison officials have hindered his ability to file a nonfrivolous legal claim." *Smith v. Collin Cnty. Jail*, 548 F. App'x 132, 133 (5th Cir. 2013).

Moore alleges he did not have access to an adequate law library or pen and paper and thus was unable to "prepare jury instruction[s] for his set July 31, 2023, trial date, forcing him to enter a plea of guilty that he relentlessly and/or would not have otherwise taken." Doc. #2 at PageID 43. This is insufficient to support an allegation of actual injury because Moore only alleges that he voluntarily pled guilty prior to trial, not that without submission of jury instructions he would have lost at trial or not been afforded a trial. To the extent Moore alleges actual injury because MCDF's legal library was inadequate, "an inmate cannot demonstrate the requisite actual injury for an access-to-courts claim simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Brantner v. Fresston Cnty. Sheriffs Office*, No. 20-50528, 2022 U.S. App. LEXIS 15924, at *6 (5th Cir. 2022) (citation and internal quotation marks omitted).

In short, Moore's First Amendment claims will be dismissed.[15]

### 3. Equal Protection Claims

Because Section 1983 also governs Moore's claims brought under the Fourteenth Amendment, such claims must be dismissed due to Moore's failure to exhaust administrative remedies.

Even if Moore had exhausted his administrative remedies, the defendants argue that Moore's "Fourteenth [Amendment] Equal Protection claims … fail, because [he] does not have standing to pursue them" since "his allegations that the Level 4 inmate designation are most often

---

[15] To the extent Moore claims his family "supplied[him] the tools needed to exercise his constitutional rights," Doc. #2 at 13-14, it appears he does not raise a constitutional violation.

given to the white inmates, that the best jobs are given to Level 4 white inmates, and that 'lockdown' for violating disciplinary rules is most often utilized against black inmates" "are generalized, conclusory, and make no allegations that his rights have been violated by these actions." Doc. #5 at 12 (footnotes omitted).

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021). "More specifically, to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must plausibly allege two things. First, he must allege that he was treated differently than persons similarly situated to him; second, he must allege that such treatment stemmed from discriminatory intent." *Id.* "To establish discriminatory intent, a plaintiff must show that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (cleaned up).

While Moore makes general and conclusory allegations that the defendants classified white inmates as Level 4 more often than black inmates and that Level 4 white inmates were assigned to the best jobs, and identified a particular group which he alleges were classified and treated differently, he does not state whether he personally was denied Level 4 classification based on his race or whether he was assigned a lesser job based upon his race. He also did not identify the requirements for Level 4 classification or allege that he meets the qualifications for a Level 4 job but was denied it because of his race. Consequently, for these additional reasons, Moore's Equal Protection claims are properly dismissed.[16]

---

[16] Because Moore did not plead a violation of his personal rights, the Court need not address the defendants' argument that Moore "failed to identify *any* similarly situated comparator." Doc. #5 at 14 (emphasis in original).

11

### C. State Law Claims Against the Board of Supervisors and Crook

The defendants argue that Moore "is barred from making any negligence claims under state law because … he did not send the requisite Notice of Claim." Doc. #5 at 14.

As stated above, the "Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for acts or omission which give rise to a claim or suit." *Delta Reg'l Med. Ctr. v. Green*, 43 So. 3d 1099, 1101 (Miss. 2010) (citing Miss. Code Ann. § 11-46-7(1)). The Board, as a municipality, is considered a governmental entity under the MTCA. *See* Miss. Code Ann. § 11-46-1(g), (i) ("governmental entity" includes "political subdivision" and "political subdivision" includes municipalities). And it is undisputed that Crook, as the Monroe County sheriff, is a governmental employee.

Under Miss. Code Ann. § 11-46-11(1), "[a]fter all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." The 90-day notice rule is "a hard-edged, mandatory rule which the Court strictly enforces." *Ivy v. GMAC*, 612 So. 2d 1108, 1116 (Miss. 1992)).

Moore did not attach a notice of claim to his complaint, and he does not allege that he complied with the notice requirements or cite any authority that he is not required to comply with the notice requirement. Moore's state law claims will be dismissed with prejudice due to his failure to comply with the MTCA's procedural requirements.[17]

---

[17] Though the defendants did not request the state law claims be dismissed with prejudice, in the interest of efficiency and for the following reasons, the Court will dismiss the state law claims against the Board and Crook with prejudice as amendment would be futile. *See Hart*, 199 F.3d at 247 n.6. Even if Moore had complied with the MTCA's notice requirement, Moore cannot proceed under state law against Crook in his individual capacity because Crook was acting within the course and scope of his employment as to the allegations in the complaint. *See Wilcher v. Lincoln Cnty. Bd. of Supervisors & City of Brookhaven*, 243 So. 3d 177, 186 (Miss. 2018) (employee acting within scope of his employment cannot be individually sued; plaintiff must sue his government employer, in accordance with Mississippi

12

### D. Injunctive and Declaratory Relief

The defendants argue that Moore's "request for declaratory and injunctive relief should also be dismissed as to Monroe County because there is no underlying cause of action to support such request." Doc. #5 at 17.

Claims for declaratory and injunctive relief "are not freestanding; they must be supported by some underlying cause of action." *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 565 n.9 (5th Cir. 2017). Because none of Moore's substantive claims for relief survive the motion to dismiss, Moore is not entitled to declaratory or injunctive relief.

### V
### Conclusion

The defendants' motion to dismiss [4] is **GRANTED**. The claims against MCDF are **DISMISSED with prejudice**. The federal claims against the Board and Crook are **DISMISSED without prejudice**. The state law claims against the Board and Crook are **DISMISSED with prejudice**. Within fourteen days of the date of this order, Moore may seek leave to amend his complaint as to the federal claims against the Board and Crook.[18]

**SO ORDERED**, this 12th day of November, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

or federal statute). And the Board is immune from suit under § 11-46-9(1)(m), which states that a governmental entity or its employees are immune regarding allegations "of any claimant who is at the time the claim arises is an inmate of any … jail" and "[i]nmate" includes pretrial detainees. *Hinds Cnty. v. Burton*, 187 So. 3d 1016, 1024 (Miss. 2016). Moore was either a pretrial detainee or an inmate during the relevant period.

[18] If Moore does not request leave to amend within fourteen days, a judgment will be entered consistent with the rulings in this order.